**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ALISSA GERRAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:24-CV-00843-SPM |
| | ) |
| CITY OF FERGUSON, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motions to dismiss the claims against them, Plaintiffs' motion to dismiss their federal claims, and several related motions filed by the parties. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C.§ 636(c)(1). *See* ECF No. 17.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Kwan Scott, Javon Buckner, Alisa Gerran (mother of Lalark Grouse), and Lena Rogers (mother of Avner Rogers) originally brought this lawsuit in February 2023 in the Circuit Court of St. Louis County, Missouri. Defendants removed the case to this Court based on federal question jurisdiction.

In the Third Amended Complaint, as in their state court petitions, Plaintiffs allege the following. Ferguson police officer Marquis Jones, operating a white Chevrolet Sport Utility Vehicle, pursued Plaintiffs' Dodge Charger for a traffic violation. He eventually told dispatch he was terminating the pursuit, but he continued it. At the same time, a second, unknown Ferguson police officer ("John Doe"), driving a second vehicle, was acting in concert with Jones to profile and apprehend the occupants of the Charger. As the Charger turned onto Canfield Drive, "John

1

Doe, acting with Defendant Jones, maneuvered the unmarked vehicle to suddenly impede the path of" the Charger. John Doe exercised or attempted to exercise a "pit maneuver" by causing or attempting to cause the unmarked vehicle to come into contact with the Charger. As a result of the combined efforts of John Doe and Jones, Plaintiff Scott lost control of the Charger, and it struck a nearby tree, resulting in the deaths of two occupants and serious injuries to two others. Immediately after the collision, Jones arrived at John Doe's vehicle, after which John Doe gave Jones a "thumb up." This gesture was intended to, and did, amount to affirmation of the concerted acts of Jones and Doe to cause or attempt to cause the collision, deaths, and/or injuries of the occupants of the Charger. Jones's report of the incident intentionally omits and/or conceals John Doe's identity. The City of Ferguson had policies, practices, and customs that allowed its individual officers to violate Plaintiffs' rights and failed to provide adequate training to its officers..

Each plaintiff asserts one count of negligence against Defendant Jones (Counts I, VII, XIII, XIX), one count of negligence against Defendant John Doe (Counts II, VIII, XIV, XX); one count of respondeat superior liability for negligence against Defendant City of Ferguson (Counts III, IX, XV, XXI); one count of excessive use of force in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983, against Defendants Jones and Doe (Counts IV, X, XVI, XXII); one count of *Monell* liability, pursuant to § 1983, against the City of Ferguson (Counts V, XI, XVII, XXIII); and one count of *Canton* liability, pursuant to § 1983, against Defendant City of Ferguson (Count VI, XII, XVIII, XXIV).

In August 2024, the Court held a scheduling conference pursuant to Fed. R. Civ. P. 16, at which the identity of the John Doe officer was discussed. Defense counsel represented to the Court and to Plaintiffs' counsel that defense counsel did not believe that there was a second officer or an unmarked Ferguson police vehicle at the scene of the crash. The Court encouraged Plaintiffs to

2

identify or dismiss the John Doe defendant as soon as possible. The Court also entered a Case Management Order setting a November 15, 2024, deadline for motions for joinder of parties or amendment of pleadings. In September 2024, Defendant City of Ferguson and Defendant Jones filed separate motions to dismiss. In October 2024, the parties exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a); those disclosures apparently did not shed any light on the identity of the John Doe defendant or the question of whether there was any second officer at the scene when the crash occurred. In December 2024, having received no additional filings related to the John Doe defendant, the Court entered an order requiring Plaintiffs to show cause why the claims against John Doe should not be dismissed. Plaintiffs responded by seeking an extension of time to amend the pleadings and serve the second officer. On February 5, 2025, though finding it presented a "very close call," the Court granted a short extension of the deadline to amend Plaintiffs' complaint, solely to allow Plaintiffs to conduct discovery to determine the identity of John Doe and file an amended complaint containing his name. Plaintiffs subsequently began to conduct discovery.

According to Plaintiffs, the allegations that a second officer conducted a pit maneuver that caused the crash were based in inferences drawn from Jones's incident report and witness statements. *See* ECF No. 57, at ¶ 5; ECF No. 66, at p. 2; ECF no. 73, at p. 1. In his incident report, Jones stated that he activated his emergency lights and siren to attempt a traffic stop of the Charger; that he later lost sight of the Charger and deactivated his lights and sirens; that he began to patrol nearby apartments and observed an older white sedan stopped in the roadway; that he approached the white sedan and asked if everything was okay; that the driver of the vehicle gave a thumbs up; that Jones continued patrolling the area; that Jones then came upon the Charger, which had crashed into a tree; and that Jones talked to a female witness at the scene and tried to break the driver's

3

door window to rescue the driver. ECF No. 60-2, at pp. 7-9. The record also contains a statement from a witness that she was driving down Canfield when "all of a sudden a dark vehicle being chased by a large old school white vehicle crashed into a tree," after which she stopped and "the large white vehicle zoomed past us." ECF No. 60-4, at p. 1. After the witness got out to help, a police SUV arrived, and the officer talked to the witness and then tried to break the driver's side window. *Id.* at p. 2. Subsequently, numerous police vehicles arrived on the scene. *Id.*

On March 4, 2025, Jones gave deposition testimony generally consistent with his incident report. He did not recall many of the details of his interaction with the white vehicle, but he did testify that he either slowed or stopped to ask the occupant if he or she was okay. ECF No. 60-3.

On March 13, 2025, in response to Plaintiffs' first requests for production, Defendants produced video footage from a third-party security company that appears to show Plaintiffs' Charger, Jones's police SUV, and a white sedan shortly before the crash occurred. On March 17, 2025, Plaintiffs filed a Notice informing the Court that based on the video footage, they did not intend to amend the complaint to name the John Doe defendant. Plaintiffs stated that the video footage shows that Jones's statements about the white vehicle in his incident report were "fabricated" and thus Plaintiffs "no longer have any reason to believe that the white vehicle referenced in the incident report and depicted in the video had any connection with Defendant Jones, nor with the cause of the collision." ECF No. 57, at ¶¶ 10-11. The Court then dismissed the claims against John Doe. ECF No. 58.

Plaintiffs' statements in the Notice of No Substitution indicate that Plaintiffs no longer believe many of the central allegations in the Third Amended Complaint, which substantially impacts not only the claims against John Doe but also the claims against Jones and the City. Since Plaintiffs filed the Notice, the parties have filed several documents addressing the impact of

4

Plaintiffs' changed position on this case: both parties' supplemental briefs on Defendants' motions to dismiss; Plaintiffs' motion to dismiss the federal claims; Plaintiffs' motion to remand the state law claims to state court; Plaintiffs' motion for sanctions based on the assertion that Jones lied in his report and deposition and that the City improperly withheld the video footage; and Plaintiffs' motion for leave to file a Fourth Amended Complaint that reflects their current understanding of the facts. The Court will address each of the motions, and the earlier filed motions that are still pending, below.

II. DISCUSSION

### A. Plaintiffs' Supplemental Brief and Motion to Dismiss Plaintiffs' Federal Claims (ECF No. 70)

The Court begins with Plaintiffs' Supplemental Brief and Motion to Dismiss Plaintiffs' Federal Claims, in which Plaintiffs state that based on the newly discovered evidence and information disclosed to them on March 13, 2025, they are "no longer able to proceed in good faith on any of their federal claims against Defendants Marquis Jones and City of Ferguson." ECF No. 70, at 2. They ask the Court, pursuant to Fed. R. Civ. P. 41(a)(2), to dismiss their federal claims, which are contained within Counts IV, V, VI, X, XI, XII, XVI, XVII, XVIII, XXII, XXIII, and XXIV of Plaintiffs' Third Amended Complaint.

Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Based on Plaintiffs' representation that, based on newly discovered evidence, they are no longer able to proceed in good faith on any of their federal claims, the Court finds that their motion should be granted and that their federal claims should be dismissed with prejudice.

5

**B. Defendant Jones's Motion to Dismiss (ECF No. 25), Defendant City of Ferguson's Motion to Dismiss (ECF No. 29), and Plaintiffs' Motion to Remand (ECF No. 71)**

Defendant Jones and Defendant City of Ferguson have moved to dismiss all of Plaintiffs' claims against them pursuant to Fed. R. Civ. P. 12(b)(6). These motions have been fully briefed. Because the Court has granted Plaintiffs' motion to dismiss the federal claims, Defendants' motions to dismiss will be denied as moot as they relate to the federal claims. However, the motions to dismiss the state law claims remain pending.

Having dismissed all of the federal claims in this case, the Court must now determine whether it will exercise supplemental jurisdiction over the remaining state claims. A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639 (2009)). The Eighth Circuit has held that "when a district court has dismissed every federal claim, as here, 'judicial economy, convenience, fairness, and comity' will usually 'point toward declining to exercise jurisdiction over the remaining state-law claims.'" *McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) (quoting *Wilson v. Miller*, 821 F.3d 963, 970-71 (8th Cir. 2016)). *See also Barstad v. Murray Cty.*, 420 F.3d 880, 888 (8th Cir. 2005) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). This reflects the policy that the federal courts should

"exercise judicial restraint and avoid state law issues whenever possible" and should "provide great deference and comity to state court forums to decide issues involving state law questions." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990). *See also Gregoire v. Class*, 236 F.3d 413, 419-20 (8th Cir. 2000) ("When state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law . . . as a matter of comity.") (quotation marks omitted).

Plaintiffs have filed a motion to remand the state law claims. After consideration of the above factors, the Court is inclined to agree with Plaintiffs that remand of the state law claims is appropriate here. Although this case has been pending in this Court for over two years, very little of substance has occurred, and discovery has only recently begun. The only remaining claims involve purely issues of state law, which the state court is better positioned to evaluate. However, because Defendants indicated at a recent case status conference that they would likely oppose any request for remand, the Court will defer ruling on the question of whether to exercise supplemental jurisdiction or remand the claims until Defendants have had the opportunity to respond to Plaintiffs' motion to remand.

### C.  Defendants' Motion to Strike (ECF No. 27)

Defendant City of Ferguson moves to strike paragraphs 57 through 65 of the Third Amended Complaint and the exhibits attached to the Third Amended Complaint. The challenged allegations relate to the past harmful and unlawful conduct of City of Ferguson officers and the City's knowledge of that conduct. Defendant City argues that these allegations and exhibits bear no relation to the claims raised against the City and serve only as an attempt to portray the City in a derogatory light. They also argue that the exhibits are inadmissible under the Federal Rules of

7

Evidence.

Rule 12(f) of the Federal Rules of Civil Procedure provides, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although judges have "liberal discretion to strike pleadings," striking a pleading is "an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). "There is general judicial agreement that a motion to strike should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy." *Hammond v. 801 Rest. Grp., LLC*, No. 4:21-CV-00209 JCH, 2021 WL 2438916, at *6 (E.D. Mo. June 15, 2021). "[M]atters that are not strictly relevant to the [principal] claim should not be stricken if they provide 'important context and background' to claims asserted."*Id.* (quoting *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000)). "To prevail on a motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." *Aldridge v. City of St. Louis, Missouri*, No. 4:18-CV-1677 CAS, 2019 WL 1695982, at *15 (E.D. Mo. Apr. 17, 2019)  (quoting 2 James W. Moore, et al., Moore's Federal Practice § 12.37[3] (3rd ed. 2018)). *See also Hall v. City of St. Louis*, 465 F. Supp. 3d 937, 952 (E.D. Mo. 2020) ("The party moving to strike bears the burden of demonstrating that the challenged allegations are so unrelated to [the plaintiff's] claim that they are devoid of merit, unworthy of consideration and are unduly prejudicial.") (quoting *Whitlock-Kincade v. United States DOD*, 4:06-CV-895 RWS, 2007 WL 781810 (E.D. Mo. Mar. 13, 2007)).

After review of the relevant paragraphs of the Third Amended Complaint and the relevant exhibits, the Court finds that Defendant City of Ferguson has not satisfied its burden of showing that this is the unusual situation in which allegations should be stricken. The challenged allegations

8

and exhibits were clearly related to Plaintiffs' now-dismissed *Monell* and *Canton* claims, and they are at least arguably related to Plaintiffs' state law claims, which include allegations about what the City of Ferguson knew or reasonably should have known with respect to its officers' patterns and practices of behavior. Defendant City has not clearly shown either that these allegations have no bearing on the subject matter of this litigation or that their inclusion will prejudice Defendants. Additionally, Defendant City's arguments that the DOJ report and the Consent Decree would be inadmissible under the Federal Rules of Evidence are premature and unrelated to the standard for evaluating a motion to strike.

For all of the above reasons, the City's motion to strike will be denied.

**D. Plaintiffs' Motion for Sanctions (ECF No. 60)**

In their Motion for Sanctions, Plaintiffs argue that sanctions against Defendants are warranted because (1) the video footage shows that Defendant Jones lied under oath in his March 2025 deposition (and lied in his report) when he stated that he stopped pursuing Plaintiffs' vehicle, lost sight of Plaintiffs' vehicle, and stopped to talk to the occupant of a white vehicle; and (2) Defendant City of Ferguson should have produced the video footage earlier, as part of its initial Rule 26 disclosures. Plaintiffs argue that Defendants' actions prevented Plaintiffs from being able to discover the actual facts of the pursuit and present any theory of liability untethered to the white vehicle. The motion for sanctions is based on the Court's inherent authority and not on any specific rule.

In Plaintiffs' motion, Plaintiffs originally asked the Court to strike Defendants' pleadings and enter default judgment in Plaintiffs' favor. However, in a separate Motion to Remand and Request for Ruling on Sanctions, filed after the motion for sanctions had been fully briefed, Plaintiffs informed the Court that they "no longer seek default judgment against Defendants and

9

limit their request to an order for monetary sanctions for attorney's fees and costs to the Plaintiffs, for Plaintiffs' costs and expenses associated with the depositions of Defendant Jones and Domica Gerald (Morrow), sanctions against Defendant City of Ferguson for knowingly withholding the [video footage], and sanctions against Defendant Jones for knowingly providing false and misleading testimony about material issues in this case, each of which contributed to a waste of party and judicial resources." ECF No. 71, at 3.

The Court has the inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107, (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). As the parties agree, the sanction of default judgment originally requested by Plaintiffs requires "(1) clear and convincing evidence that the misconduct occurred and (2) that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits." *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694-95 (8th Cir. 2001) (citing *Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469 (D.C. Cir. 1995)). Plaintiffs have not provided any legal authority related to their new request for attorney's fees or monetary sanctions. The Court's own research suggests that the Court "may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46 (internal quotation marks omitted). Attorneys' fees must be limited to those that "would not have been incurred in the absence of the sanctioned conduct." *Goodyear Tire & Rubber Co.,* 581 U.S. at 110.

The Court finds no basis for imposing any of the sanctions requested by Plaintiff. First, after review of the video, the Court finds no clear and convincing evidence that either defendant engaged in misconduct or acted in bad faith, vexatiously, wantonly, or for oppressive reasons. The video footage, though it is arguably inconsistent with certain aspects of Jones's report and

10

testimony and could provide evidence to impeach Jones's testimony, does not clearly demonstrate that Jones lied.[1] The Court also finds no clear or bad faith violation of Defendants' Rule 26(a)(1) disclosure obligations.[2] Additionally, Plaintiffs have not shown that they incurred attorney's fees or other expenses that they would not have incurred in the absence of Defendants' alleged misconduct. It appears that Plaintiffs have engaged in only the most minimal, basic discovery—deposing one defendant and one other witness, and serving interrogatories and requests for production. All of this discovery would likely have occurred regardless of the alleged misconduct. Indeed, if Plaintiffs had conducted such discovery promptly following the Rule 16 conference, significant party resources and judicial resources expended over the last several months would have been saved.

Moreover, the Court completely rejects Plaintiffs' suggestion that Defendants' conduct

---

[1] The vehicles in question are outside the camera's field of view during much of the relevant time period in the video footage. Plaintiffs' interpretation of the pattern of moving lights (presumably headlights), while arguably more consistent with a version of events in which Jones did not stop to talk to the white vehicle than one in which he did, is not clearly inconsistent with Jones's testimony that he stopped or slowed to talk to the white vehicle, especially if the interaction was brief. The video also does not clearly contradict Jones's testimony that he lost sight of Plaintiffs' vehicle or his testimony that he was not in pursuit of the vehicle by the time he turned onto Canfield Drive—especially given that the video shows no red light activated and Plaintiff admits that the City of Ferguson defines "Emergency Vehicle, Pursuits" as "the operation of a marked police vehicle with both the red light and siren activated at all times when in pursuit," *see* ECF No. 60-1, at p. 7. Additionally, to the extent that certain parts of Jones's testimony and/or report could be found inconsistent with the video footage, it is not clear to the Court that the inconsistency was based on "lies" rather than failures of memory or other factors.

[2] Defendants' attorneys have produced evidence that they were not in possession of the video footage when they made their initial disclosures and that they promptly produced the video footage when they learned of it in March 2025 in responding to Plaintiffs' first requests for production. ECF No. 62-2. Moreover, Rule 26(a)(1)(A)(ii) only requires disclosure of materials the disclosing party "may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii). Defendants could certainly have reasonably determined that this video was not something they might use to support their claims or defenses. Plaintiffs do not direct the Court to any authority to suggest that Rule 26(a)(1) required Defendants to disclose all materials that might be relevant to Plaintiffs' claims or defenses; that is what discovery is for. *See* Fed. R. Civ. P. 26(b)(1).

11

prevented Plaintiffs from discovering the true facts and developing a theory of liability that did not involve a second officer. Plaintiffs maintained, for two years, that there was a second officer at the scene, driving an unmarked vehicle; that the second officer, acting in concert with Jones, conducted a pit maneuver that caused the crash; and that after Jones arrived at the collision, the second officer gave Jones a "thumbs up" to affirm the two officers' concerted actions. Plaintiffs should have been on notice long before they received this video footage that there was a significant possibility that this version of events might not be correct.

First, it is unclear to the Court why Plaintiffs *ever* believed that there was a second officer who conducted a pit maneuver that caused the crash. This belief appears to have been based on extraordinarily speculative inferences drawn from the statements of Jones and a second witness. Plaintiffs appear to have inferred that an older white model sedan observed near the scene was a police vehicle (despite neither witness having described it as such), that the driver of the white sedan was a police officer (despite neither witness having described him as such), that the white vehicle conducted a pit maneuver to impede the path of Plaintiffs' vehicle (despite the fact that the witness described a chase, not a pit maneuver or anything similar), and that the occupant of the white vehicle gave Jones a thumbs up after the crash to affirm his and Jones's concerted efforts to cause the crash (despite the fact that Jones stated that the thumbs up occurred *before* he came to the site of the crash and was in response to a question about whether the driver was okay). Even assuming that it was reasonable for Plaintiffs to make these highly speculative inferences initially, Plaintiffs certainly should have been aware, from the outset, of the significant possibility that these inferences might be proven incorrect through the discovery process.

Second, Defendants did not encourage Plaintiffs to persist in their incorrect belief that there was a second officer who caused the crash; to the contrary, they insisted that belief was

12

incorrect. Defense counsel has consistently, at least since the Court's August 2024 Rule 16 conference, advised Plaintiffs of Defendants' belief that there was *no* second officer at the scene. Despite this, and despite the questionable initial basis for the allegations regarding the second officer, Plaintiffs still chose not to conduct the discovery that would have allowed them to determine whether these allegations were correct. Instead, Plaintiffs waited until over five months after the Rule 16 conference (and until a show cause order from the Court had been entered) to finally conduct some basic discovery into their claims. As soon as Plaintiffs conducted that discovery, they promptly realized that—as Defendants had consistently maintained—there was no second officer at the scene, and their allegations were incorrect.

The Court understands that Plaintiffs are frustrated to have realized, two years into the litigation, that their theory of liability has no factual basis. But the fault for this situation lies principally with Plaintiffs, not Defendants. Accordingly, Plaintiffs' motion for sanctions will be denied.

### E.  Plaintiffs' Motion for Leave to File Fourth Amended Complaint (ECF No. 72)

Plaintiffs have filed a Motion for Leave to File Fourth Amended Complaint, asking the Court to permit them to file an amended complaint that omits the federal claims and modifies the facts alleged to reflect Plaintiffs' current understanding of the facts. Defendants have not yet had time to respond to this motion.

If the Court remands the state law claims to state court, the question of whether to allow this amendment would be better resolved by the state court. Accordingly, the Court will defer ruling on this motion until it resolves the question of whether to exercise supplemental jurisdiction over Plaintiffs' state law claims or remand the case to state court. Additionally, given the significant possibility that the state law claims will be remanded, the Court will extend Defendants'

13

deadline for responding to the Motion for Leave to File Fourth Amended Complaint until fourteen days after the Court has ruled on the motion to remand. Defendants may respond to the motion earlier if they wish to do so.

### III. CONCLUSION

For all of the above reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Supplemental Brief and Motion to Dismiss Their Federal Claims (ECF No. 70) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' federal claims (Counts IV, V, VI, X, XI, XII, XVI, XVII, XVIII, XXII, XXIII, and XXIV of Plaintiffs' Third Amended Complaint) are **DISMISSED**, with prejudice.

**IT IS FURTHER ORDERED** that Defendant Jones's Motion to Dismiss (ECF No. 25) and Defendant City of Ferguson's Motion to Dismiss (ECF No. 29) are **DENIED IN PART** as moot to the extent they seek to dismiss Plaintiffs' federal claims. To the extent Defendants seek to dismiss the state law claims, the Court will defer ruling until it has determined whether to exercise supplemental jurisdiction over those claims or grant Plaintiffs' motion to remand.

**IT IS FURTHER ORDERED** that Defendants shall, no later than **Wednesday, May 21, 2025**, either file a response to Plaintiffs' Motion to Remand (ECF No. 71) or notify the Court that they do not oppose Plaintiffs' Motion to Remand.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (ECF No. 27) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Sanctions (ECF No. 60) is **DENIED**.

**IT IS FINALLY ORDERED** that Defendants' response to Plaintiffs' Motion for Leave

to File Fourth Amended Complaint (ECF No. 72) shall be filed no later than **fourteen (14) days** after this Court rules on Plaintiffs' Motion to Remand.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this **12th** day of **May, 2025**.